Susan Rotkis
AZ Bar # 032866
PRICE LAW GROUP, APC
2290 E. Speedway Blvd.
Tucson, AZ 85719
T: (818) 600-5533
E: susan@pricelawgroup.com

*Attorney for William Kenneth Clark Jr*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| William Kenneth Clark, Jr<br><br>    Plaintiff,<br><br>v.<br><br>Inflection Risk Solutions, LLC<br><br>    Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br>    1.  **FCRA, 15 USC § 1681 *ET SEQ.*** |
|---|---|

Plaintiff William Kenneth Clark, Jr ("Plaintiff" or "Mr. Clark") alleges the following Defendant Inflection Risk Solutions, LLC ("Inflection" or "Defendant") violated Mr. Clark's federal consumer rights under the Fair Credit Reporting Act ("FCRA"), causing him statutory, actual, financial, emotional, and mental injuries.

## PRELIMINARY STATEMENT

1. This Complaint is based on violations of the FCRA, 15 U.S.C. § 1681 *et seq.* against Defendant.

## JURISDICTION AND VENUE

2.  Plaintiff resides in Maricopa County, Arizona, which is within the District of

1

Arizona.

3. The federal courts have federal question jurisdiction over this lawsuit because claims arise from Defendant's violations of federal law. 28 U.S.C. § 1331.

4. Venue is proper pursuant to 28 U.S.C. 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred within the geographic confines of the Phoenix Division of the District of Arizona.

5. Defendant transacts business in this district so that personal jurisdiction is established.

**PARTIES**

6. Plaintiff is a natural person residing in Maricopa County, Arizona.

7. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

8. Defendant is a "consumer reporting agency" as defined under 15 U.S.C. 1681a(f), with its principal place of business located at 555 Twin Dolphin Drive #630 Redwood City, CA 94065.

9. Upon information and belief Defendant is a consumer reporting agency that sells consumer reports, background and employment services, risk management services and products, information management products and services, and decision-making intelligence.

10. Defendant acted through its agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insures.

# FACTUAL ALLEGATIONS

**A. Plaintiff was inaccurately and egregiously misidentified and reported as a hardened criminal.**

1. Plaintiff is an engineer and is a CEO in several firms that he owns and manages.

2. His billing rate is $447 an hour.

3. On or around November 8, 2022, Plaintiff was planning a vacation and tried renting a 1-bedroom home or apartment through Airbnb.

4. As part of the application process, Airbnb obtains a consumer report, also known as a background check.

5. Airbnb purchased a background report ("the report"), which is a consumer report under the FCRA, from Defendant to determine if Plaintiff had a criminal background.

6. On or around November 9, 2022, Airbnb informed Plaintiff that his background report was complete, and that based on information contained in the background report Plaintiff would "not be able to host or book reservations on Airbnb."

7. As a result of the erroneous criminal history that Defendant sold to Airbnb, all of the reservations that the Plaintiff had extensively researched and booked were cancelled, leaving him to scramble to find accommodations for trips that he had planned.

8. Although Plaintiff was informed that he would receive a full refund and all other parties would be notified about the cancellations, he could not be reimbursed for his lost time nor the ability to find and reserve the same or similar

accommodations.

9. Plaintiff was provided with a copy of the background report. Plaintiff reviewed the background report and was shocked and horrified to learn that it contained criminal background of one or more individuals named William Clark who had committed various crimes in the Philadelphia area.

10. Specifically, the background report was divided into three parts: (i) National Criminal Records Search; (ii) Sex Offender List Search; and (iii) Global Watch List Search.

11. The Sex Offender List Search and Global Watch List Search yielded 0 results attributable to the Plaintiff.

12. The National Criminal Records Search returned 3 criminal records.

13. The first record was merely accurate traffic.

14. The first record correctly named Plaintiff as William Kenneth Clark, with his address in Tempe, Arizona.

15. The second record inaccurately reported that Plaintiff pled guilty to a felony of aggravated assault (court case: CP-51-CR-0005077-2018) and a misdemeanor of theft by unlawful taking (court case: CP- CP-51-CR-0005077-2018).

16. The third record inaccurately reported the same information as paragraph 15 but listed it as a separate offense labeled Record #3, making it look like an additional criminal offense.

17. The second and third offenses named the individual as William Clark, another individual who did not have an address reported.

4

18. Plaintiff did not commit or plead guilty to the crimes recorded in records 2 and 3 of his report.

**B. Based on the report, Plaintiff was banned from Airbnb**

19. In response to the report, Airbnb cancelled Plaintiff's reservations and refunded him the payments for the accommodations that he had paid for.

20. On November 9, 2022, Airbnb informed Plaintiff that based on the results of his report, he would not be able to host or book reservations on Airbnb. The email stated in pertinent part:

> We've recently completed an evaluation of your Airbnb account, which included a consumer report generated using the Inflection SafeDecision API product offered by Inflection Risk Solutions, LLC.
>
> That consumer report contained the following information:
>
> - Criminal Records Match
>
> Due to this finding, we regret to inform you that you will not be able to host or book reservations on Airbnb. If you have any upcoming reservations, they'll be canceled for a full refund and all other parties will be notified about the cancellations. You should receive a separate email with more details.
>
> …
>
> Inflection SafeDecision API provided information used to make this determination. They took no part in making the decision to decline your application and cannot explain why the decision was made.
>
> You have a right under the Fair Credit Reporting Act (FCRA) to know the information contained in your consumer report at Inflection SafeDecision API and to:
>
> - request a free copy of your consumer report from Inflection SafeDecision AOI within sixty (60) days of this notice; and
> - dispute any inaccurate or incomplete information contained in your

consumer report directly with Inflection SafeDecision API

You can read the summary of your rights under FCRA. You can access the report used in making this determination and initiate any dispute process, as needed, on the Inflection SafeDecision API site.

You can also request a free copy You can also request a free copy of your report or initiate the dispute process by contacting Inflection SafeDecision API directly…

If you believe your consumer report contains errors, once you've worked with Inflection SafeDecision API to correct them, we will be notified and can move forward with reviewing your account reinstatement request.

C. **Defendant's re-investigation confirmed that Defendant had made a mistake**

21. On or around November 8, 2022, Airbnb requested from Inflection Risk Solutions, LLC., a background check on Plaintiff to determine his eligibility to use the platform.

22. On or around November 8, 2022, Defendant ran a background check on Plaintiff.

23. On or around November 8, 2022, Plaintiff disputed the information contained in the background check.

24. On or around November 8, 2022, Plaintiff received an email from Defendant titled "Dispute Received" in which Defendant said it was investigating Plaintiff's dispute.

25. Defendant provided an updated background check report to Airbnb on November 8, 2022 and requested that Airbnb expedite their review of Plaintiff's account.

26. On or around November 9, 2022, Defendant sent an email to Plaintiff with

6

documents attached that contained more information regarding its dispute reinvestigation process after Plaintiff called Defendant to provide more information regarding the inaccuracy on his consumer report.

27. In a letter dated November 9, 2022, Defendant provided the result of the reinvestigation, and removed the false criminal records.

## D. Defendant's matching policies damaged Plaintiff

28. Defendant is a consumer reporting agency that sells credit reports to its customers, including Airbnb. This business conduct is governed by the FCRA.

29. As an FCRA-governed consumer reporting agency, Defendant failed to follow reasonable procedures to assure the maximum possible accuracy regarding the information it sells about consumers, including the Plaintiff. *See* 15 U.S.C. §1681e(b).

30. One of the most well-known and prevalent inaccuracies that occur in the consumer reporting industry is a "mixed file."

31. A mixed file is a consumer report in which some or all of the information in the report pertains to an individual who is not the subject of the report.

32. The main cause of mixed files is the failure of a CRA to use adequate identifying information to match records to the personal identifying information of consumers who are the subject of its reports.

33. Defendant's standard practice is to use only partial matching and not full identifying information in preparing consumer reports. For instance, Defendant does not require a match to full identifying information (such as full last name

and first name; middle initial; full street address; zip code; year of birth; any generational designation; and social security number) before preparing a report that it attributes to a particular consumer and sells about that consumer.

34. Moreover, Defendant employs policies and procedures that do not include the use of a reasonable number of identifiers, or even a precise first and last name, and that frequently allow the information belonging to one consumer to appear in the consumer file of another.

35. Defendant does not require that the identifiers that it does use to match character-for-character. For example, Defendant does not require names to match character-for-character.

36. Defendant employs these loose matching procedures in order to maximize the number of reports which contain information, accurate or not. Defendant intentionally employs procedures that maximize the likelihood of a match between any inquiry and some data in its database about one or more consumers, purposefully prioritizing quantity of matches over accuracy of matches.

37. Defendant has used the same matching procedure to create many consumer reports which include criminal records for which the name of the criminal does not match the name of the individual who is the subject of the report. Such mismatches are obvious from the face of the reports.

38. Defendant's reporting of inaccurate public record information is not accidental, nor just a result of simple negligence, but a result of deliberately designed policies and procedures.

39. Plaintiff has spent a considerable amount of time trying to resolve the inaccuracy reported on his consumer report.

40. Although the inaccuracies were eventually corrected, it was too late to undo the injuries that the Plaintiff suffered. For instance, he could not rebook the Airbnb accommodations nor recapture the spent time searching for the accommodations, comparing, and communicating with hosts on the Airbnb platform to rent.

41. Airbnb, its employees, and potentially the hosts, had now all been falsely told that the Plaintiff had a criminal record that was serious enough to cancel his reservations and ban him from the platform.

42. After the ordeal, Plaintiff had a call with a representative from Airbnb escalations, where Airbnb apologized for the inconvenience and provided a gift voucher as a nominal apology.

43. Plaintiff seeks damages associated with the amount of time lost trying to resolve the inaccuracy reported by Defendant, including but not limited to the time he spent on November 8, 2022:

    a. 10:00am: Call with Inflection, (the team was unavailable) 855-278-7451 – 5 minutes

    b. 10:07am: Call with Inflection, (the team was unavailable) 855-278-7451 – 9 minutes

    c. 10:17am: Call with Inflection, (the team was unavailable) 855-278-7451 – <1 minute

    d. 10:17am: Call with Airbnb, 855-424-7262 – 16 minutes

    e. 10:38am: Call with Airbnb, 855-424-7262 – 13 minutes

    f. 10:52am: Call with Inflection, (the team was unavailable) 855-278-7451 – <1 minute

    g. 10:52am: Call with Inflection, (the team was unavailable) 855-278-7451 – <1 minute

    h. 11:05am: Call with Inflection, (the team was unavailable) 855-278-7451 – <1 minute

    i. 11:14am: Call with Inflection, (the team was unavailable) 855-278-7451 – 1 minute

    j. 11:15am: Plaintiff made a call to a seek legal help regarding this inaccurate reporting – 3 minutes

    k. 11:19am: Call with Airbnb, 855-424-7262 – 16 minutes

    l. 11:51am: Call with Inflection, (the team was unavailable) 855-278-7451 – <1 minute

    m. 12:26pm: Call with Airbnb, 855-424-7262 – <1 minute

    n. 3:53pm: Call with Airbnb, 855-424-7262 – 5 minutes

    o. 4:01pm: Call with Airbnb, 855-424-7262 – 7 minutes

    p. 4:40pm: Call with Airbnb, 855-424-7262 – 26 minutes

    q. 5:05pm: Call with Price Law Group regarding this issue – 35 minutes

44. Plaintiff also paid a fee for Plaintiff's counsel to review the consumer report.

45. The basis of for the denial of service and cancelation of the Plaintiff's bookings

was the inaccurate criminal information that appears on Plaintiff's consumer reports prepared by Defendant, which was not only a substantial factor for the denials, but the only factor.

46. As a result of Defendant's conduct, Plaintiff has suffered injuries resulting in actual damages in the form of a lost rental opportunity, lost time, harm to reputation, physical symptoms and sickness, and emotional distress, including humiliation and embarrassment.

47. The injuries suffered by the Plaintiff are the very type of injuries that Congress sought to address in the passage of the FCRA.

48. The violations of the FCRA by the Defendant are akin to the common law causes of action of invasion of privacy and defamation.

49. Defendant has been sued repeatedly for this exact violation of the FCRA, yet it has not meaningfully changed its policies and procedures to reduce and eliminate the kind of injuries it caused the Plaintiff through its loose matching algorithm that mixed the Plaintiff with a convicted felon.

50. The Defendant's conduct is willful because it is aware of the problems of mixing consumers, leading to inaccurate attribution of criminal records, but has not corrected it because it would negatively impact on its bottom line.

51. Upon information and belief, Defendant's operations are based outside the United States.

52. At all times pertinent hereto, Defendant was acting by and through its agents, servants and/or employees who were acting within the course and scope of their

agency or employment, and under the direct supervision and control of Defendant.

53. At all times pertinent hereto, Defendant's conduct, as well as that of its agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state law and the rights of the Plaintiff.

## COUNT I

### Violations of the Fair Credit Reporting Act 15 U.S.C. § 1681e(b) against CRA Defendant

54. Plaintiff relies on the facts described in this Complaint to support the allegation that the Defendant violated the FCRA as described in Count I.

55. The FCRA requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

56. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports and its files that Defendant maintained and published to third parties concerning Plaintiff.

57. Despite being on actual notice of the inaccuracies described in the Complaint, the Defendant did not have or follow a procedure that was reasonably adapted to assure the maximum possible accuracy of the criminal record information it reported about

Plaintiff and published that information to third parties.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against Defendant for the following:

58. A declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

59. An award of actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

60. An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

61. An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2);

62. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3), § 1681o(a)(2), and 1681o(b);

63. Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## JURY DEMAND

64. Pursuant to the Federal rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues so triable.

**TRIAL BY JURY IS DEMANDED**

<u>By: /s/ Susan Rotkis</u>
Susan Rotkis
AZ Bar # 032866
PRICE LAW GROUP, APC
2290 E. Speedway Blvd.
Tucson, AZ 85719
T: (818) 600-5533
E: susan@pricelawgroup.com

*Attorney for Plaintiff*
